**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**HESHAM ALKHULAQI,**

**Plaintiff,**

**v.**

**MADISON COUNTY, ILLINOIS, and JOHN DOES 1-10,**

**Defendants.**

**Case No. 3:25-CV-02054-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Hesham Alkhulaqi initiated this civil action against Defendants Madison County, Illinois ("Madison County") and John Does 1-10. Madison County has moved to dismiss for failure to state a claim. (Doc. 12). For the reasons set forth below, the Court grants in part and denies in part Madison County's Motion to Dismiss Plaintiff's Complaint.

## BACKGROUND

Plaintiff Alkhulaqi is a hemp distributor who operates a business that purchases hemp products wholesale and supplies them to retail stores throughout the Midwest. (Doc. 1 ¶ 7). He does so pursuant to the 2018 Agriculture Improvement Act, which classified products containing a maximum of 0.3% of THC as legal hemp. (*Id*. ¶ 11). Any products containing more THC are treated as illegal marijuana. (*Id*. ¶ 32). Defendant

Madison County is a governmental entity that trains, supervises, and enacts policies for local police officers. (*Id.* ¶ 10).

On July 11, 2024, while driving on Interstate 55 from St. Louis to Chicago with legal hemp inventory, Alkhulaqi claims that he was pulled over by law enforcement officers in Madison County. (*Id.* ¶ 19). The officers searched his vehicle with the assistance of drug detection dogs and discovered the various hemp products. (*Id.* ¶ 20). After Alkhulaqi presented paperwork documenting that his products were legally compliant, the officers allowed him to leave without seizing any property or detaining him further. (*Id.* ¶¶ 21-23).

On July 15, 2024, while returning to Missouri from Chicago and carrying his hemp products, Alkhulaqi was again pulled over in Madison County. (*Id.* ¶ 24). He claims that he was handcuffed and placed in a police vehicle while officers searched his car using drug detection dogs who allegedly alerted to the presence of narcotics. (*Id.* ¶¶ 26-27, 29). Upon discovering the hemp inventory, the officers conducted a Nark II field test on a hemp sample and allegedly discovered that it tested above legal limits. (*Id.* ¶ 32). The officers then seized his entire inventory, dismissing Alkhulaqi's asserted attempts to show his documentation. (*Id.* ¶¶ 30, 36). They have not returned his property since. (*Id.* ¶ 38).

Alkhulaqi claims that it is "widely known in law enforcement" that Nark II tests "cannot reliably distinguish legal hemp from illegal marijuana." (*Id.* ¶¶ 33-34). He also claims that drug detection dogs cannot distinguish between these products, "making their alerts meaningless" in this context. (*Id.* ¶¶ 34-35).

Based on these allegations, Alkhulaqi asserts that Madison County maintained policies that wrongfully treat legal hemp as contraband and failed to train its officers to distinguish between the two. (*Id*. ¶ 88). Alkhulaqi also alleges a conversion claim against the County for its continued withholding of his hemp inventory and a tortious interference with business relations claim for interfering with his relationship with customers. (*Id*. ¶¶ 91, 102). He seeks compensatory damages, injunctive relief requiring the return of his inventory, prospective injunctive relief preventing further interference with his business, and declaratory relief establishing his right to continue distributing hemp. (*Id*. ¶¶ 105-109). Alkhulaqi also alleges claims against unknown John Doe officers for violating his constitutional rights, conversion, false imprisonment, intentional infliction of emotional distress, and interference with business relations. (*Id.* ¶¶ 61-103).

Madison County has moved to dismiss the Complaint, arguing that Alkhulaqi has failed to state a claim for municipal liability under 42 U.S.C. § 1983, that the County is immune to his various tort claims under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), and that he does not have standing to seek injunctive relief.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). To survive a Rule 12(b)(6) motion, the plaintiff only

needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

## DISCUSSION

### I. Municipal Liability

In Count VI, Alkhulaqi brings a *Monell* claim against Madison County under 42 U.S.C. § 1983 for maintaining a policy that improperly treats legal hemp as contraband and for failing to train officers to adequately distinguish between the two. The Court agrees in part.

For a plaintiff to establish municipal liability under § 1983, he must demonstrate that the municipality itself caused the constitutional violation through an established policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 707-708 (1978). Neither *respondeat superior* nor any other principle of vicarious liability will apply. *Id*. A *Monell* claim has four elements: (1) an underlying constitutional deprivation; (2) a "municipal action" (*i.e.*, a policy or custom) to which the deprivation can be traced; (3) municipal culpability, demonstrating at a minimum "deliberate indifference;" and (4) causation, meaning the municipal action was the "moving force" behind the constitutional injury. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (citing to *Monell*, 436 U.S. at 691-94).

Even where there is no municipal action, a municipality's failure "to train certain employees about their legal duty to avoid violating citizens' rights may [still] rise to the

level of an official government policy for purposes of § 1983… if the plaintiff shows that the municipality was deliberately indifferent to his constitutional rights." *Milbeck v. George*, 171 F.4th 930, 938 (7th Cir. 2026) (citations omitted) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

*A. Constitutional Violation*

The Fourth Amendment protects a person's right to their personal property. U.S. Const. amend. IV; *Herring v. United States*, 555 U.S. 135, 136 (2009). To determine whether an officer's seizure of such property amounts to a constitutional violation, "the ultimate touchstone . . . is reasonableness." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (internal quotations omitted).

However, reasonableness does not demand perfection. *Id*. The Fourth Amendment leaves room for government officials to make mistakes of fact or law—but such mistakes "must be *objectively* reasonable." *Id*. at 61, 66. A court does "not examine the subjective understanding of the particular officer involved . . . Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty bound to enforce." *Id*. at 66-67; *see also id*. at 69 (Kagan, J., concurring) ("[A]n officer's reliance on an incorrect memo or training program from the police department makes no difference to the analysis [of reasonableness] . . . Those considerations pertain to the officer's subjective understanding of the law and thus cannot help to justify a seizure.") (citations omitted) (internal quotations omitted).

Here, Alkhulaqi alleges that the seizure of his legal hemp inventory was a Fourth Amendment violation. (Doc. 1 ¶ 44). The officers who seized his hemp mistakenly

believed it to be illegal marijuana. The key inquiry as to whether this mistaken seizure constituted a Fourth Amendment violation is its objective reasonableness. Accepting Alkhulaqi's well-pleaded allegations as true and drawing all reasonable inferences in his favor, he has sufficiently pleaded that the mistake was not reasonable.

First, Alkhulaqi alleges that it is "widely known" that neither Nark II tests nor drug detection dogs can distinguish legal hemp from illegal marijuana. If the officers knew of this deficiency—and the well-known nature of the flaw suggests they did or should have—their continued reliance on these tools to judge legality undermines the objective reasonableness of their mistake. Nor can they escape this conclusion by pointing to an "incorrect . . . training program from the police department" or a "sloppy" understanding of the law. *Heien*, 574 U.S. at 69 (Kagan, J., concurring) (first quotation); *id*. at 67 (majority opinion) (second quotation).

Second, Alkhulaqi alleges that during the second stop he repeatedly attempted to show the officers documentation proving his inventory's compliance with federal law. (Doc. 1 ¶ 31). This alone may not sway a reasonableness analysis. However, those same documents were allegedly enough to convince officers of the legality of Alkhulaqi's products during the previous stop—a fact that again raises plausible questions about the objective reasonableness of the officer's later seizure.

Thus, Alkhulaqi has pleaded sufficient facts to support a conclusion that the seizure of his hemp was unreasonable and constituted a Fourth Amendment violation.

*B. Policy or Custom*

Municipal action may be established in three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Thomas*, 74 F.4th at 524 (citations omitted).

Because Alkhulaqi neither argues that there is an express policy nor that his injuries were caused by someone with final policymaking authority, the Court's analysis will focus on practices that are so widespread that they plausibly constitute municipal action.

"[T]he word 'widespread' must be taken seriously." *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). A plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id*. Allegations of just "a few sporadic examples of an improper behavior" do not suffice. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (concluding that a complaint offering three examples of one officer speeding did not plausibly suggest that a city had a widespread practice of allowing officers to speed); *see Thomas*, 74 F.4th at 524 (holding that allegations of two incidents of a school excessively punishing students with behavioral disabilities failed to plausibly allege a widespread pattern or practice of Fourth Amendment violations); *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (deciding that allegations of three instances where

prison guards improperly sprayed prisoners with pepper spray did not amount to a widespread practice of Eighth Amendment violations).

Here, Alkhulaqi alleges that Madison County maintained a policy of treating hemp as illegal contraband by employing drug detection canines and Nark II field tests that cannot distinguish between lawful hemp and unlawful marijuana. He claims that this results in the seizure of perfectly legal hemp contra its legalization under the 2018 Agriculture Improvement Act. As evidence, Alkhulaqi points to the two incidents he experienced. In the first, officers searched his vehicle with drug detection dogs, found his hemp, but eventually allowed him to leave after he presented his documentation indicating that the product was federally compliant. In the second, the officers similarly employed drug detection dogs, found Alkhulaqi's hemp, tested a sample with a Nark II field test, and, concluding that it was illegal marijuana, seized his inventory despite his attempts to show the appropriate paperwork.

While Alkhulaqi attempts to argue that the County has a widespread practice of illegally seizing hemp, his own factual allegations tell a different story. If this unofficial policy truly was so "pervasive," the officers would not have allowed him to drive off with his hemp once the canines alerted to its presence. *Phelan*, 463 F.3d at 789-790. The fact they let him go rebuts his claim that the County has a policy of treating hemp as illegal.

Even assuming that both the above events hinted at such a policy, two "sporadic" incidents alone cannot demonstrate a "widespread" custom. *Flores*, 997 F.3d at 733. As such, Alkhulaqi has failed to plead enough facts to assert a plausible claim for

municipal action. However, his *Monell* claim may still survive because of Alkhulaqi's assertion that Madison County failed to train its officers.

*C. Failure to Train*

In *City of Canton v. Harris*, the Supreme Court recognized that a "municipality's failure to train employees can [] be a basis for § 1983 liability," when it reflects a "deliberate indifference" to the constitutional rights of others. 489 U.S. 378, 388 (1989). To meet this high bar, plaintiffs must show that the constitutional risks of the training program are so "known or obvious" that the County has sufficient notice of its shortcomings. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 379 (7th Cir. 2020) (citing *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Failure to train liability does not require proof of widespread violations. *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021). A single violation can suffice where the "risk of constitutional violations [is] so high and the need for training so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of institutional culpability." *Polk Cty*, 960 F.3d at 379.

Here, Alkhulaqi points to the officers' use of drug detection canines and Nark II in wrongfully seizing his hemp to argue that Madison County has failed to train its officers to differentiate between legal hemp and illegal marijuana. Acknowledging that this case is still at the pleading stage, the Court concludes that Alkhulaqi has plausibly alleged that Madison County was deliberately indifferent.

It has been almost a decade since Congress legalized hemp. Yet during both of Alkhulaqi's stops, Madison County officers showed up armed with tests that, Alkhulaqi

alleges, cannot draw the legal line between hemp and contraband. Drawing the reasonable inference that the officers were trained to use these tools during stops involving cannabis, the unconstitutional seizure of legal hemp was both obvious and inevitable. *See Kovacic v. Ruechel*, 2025 U.S. Dist. LEXIS 186539, at *48 (E.D. Wis. Sept. 23, 2025) (denying summary judgment for a failure-to-train *Monell* claim that officers wrongly seized hemp because they were not trained to distinguish between hemp and marijuana and explaining that "[a] reasonable jury could also conclude that the failure on the part of the governmental employers to adopt the policies and provide the training needed to avoid such mistakes reflected a deliberate indifference to the risk of false arrest and mistaken seizure of property.").

Accepting Alkhulaqi's well-pleaded allegations as true and drawing all reasonable inferences in his favor, the Court finds that he has alleged sufficient facts to state a *Monell* claim on a failure-to-train theory.

**II. Tort Claims**

In Counts VII and X, Alkhulaqi brings a conversion claim and an interference with business relations claim based on the extended seizure of his hemp. Madison County argues that both claims are barred by Section 2-202 of the Tort Immunity Act. 745 ILCS 10/2-202.

Section 2-202 states that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." The act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional,

shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. It is more than "mere inadvertence, incompetence, or unskillfulness." *Stiff ex rel. Stiff v. E. Ill. Area of Special Educ.*, 279 Ill. App. 3d 1076 (4th Dist. 1996).

Here, even treating all well-pleaded facts as true and drawing all reasonable inferences in his favor, Alkhulaqi has failed to plausibly allege that the officers' conduct rose above negligence or incompetence into the realm of "willful and wanton." He has not pleaded any facts alleging a safety risk or harm to his property that the officers "consciously disregard[ed]." Nor has he demonstrated that they had an "actual or deliberate" intention to harm his property. *Compare Trover v. Oglesby*, 2024 U.S. Dist. LEXIS 64965, at *29 (S.D. Ill. Apr. 9, 2024) (dismissing the plaintiff's trespass to chattels claim under the Tort Immunity Act because the record was "devoid of evidence" that the plaintiff's property was "either physically harmed or that [d]efendants 'actual or deliberate intention' was to cause harm.") *with Newsome v. Madison Cty.*, 2018 U.S. Dist. LEXIS 75147, at *14-15 (S.D. Ill. May 3, 2018) (allowing plaintiff's various tort claims to proceed from a motion to dismiss because the plaintiff "pled far more than [mere inadvertence or incompetence]: each of her state-law counts meticulously set[] out a number of ways in which the defendants may have exhibited utter indifference or conscious disregard for the safety of [the plaintiff] and other detainees at the jail.").

As such, Alkhulaqi has failed to plead sufficient facts to defeat Madison County's tort immunity. Counts VII and X are dismissed.

## III. Standing

Madison County claims that Alkhulaqi lacks Article III standing to seek injunctive relief for return of his confiscated property and to prevent Defendants from "seizing, confiscating, or interfering" with his distribution of hemp products again. (Doc. 1 at ¶ 108). Again, the Court agrees in part.

To establish standing for prospective injunctive relief, a plaintiff must show that he faces a "real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (internal quotation marks omitted). However, a past injury alone cannot establish standing for injunctive relief "if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 95-96 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Standing must be considered "separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

### *A. Injunctive Relief for Return of Seized Property*

Alkhulaqi seeks injunctive relief requiring the return of his seized property. Accepting all well-pleaded facts as true and drawing all reasonable inferences in his favor, Alkhulaqi has sufficiently alleged that he suffers "continuing, present adverse effects" from the extended confiscation of his hemp inventory. *Lyons*, 461 U.S. at 95-96. He claims that he has suffered "the destruction of his business relationships, loss of income, and inability to serve his retail customers," and that he will continue to suffer so

until his legally owned property is returned. (Doc. 1 at ¶ 55). As such, Alkhulaqi has standing to seek injunctive relief on this claim.

*B. Injunctive Relief to Prevent Interference with Plaintiff's Hemp Distribution*

Alkhulaqi further seeks prospective injunctive relief to prevent further interference with his transportation and distribution of hemp products. This claim poses a classic *Lyons* issue. In *Lyons*, the Supreme Court denied standing to a plaintiff seeking injunctive relief to prevent the police from using chokeholds against him and other similarly situated persons in the future. *Lyons*, 461 U.S. at 97. The Court explained its reasoning as follows:

> [E]ven assuming that Lyons would again be stopped for a traffic or other violation in the reasonably near future, it is untenable to assert, and the complaint made no such allegation, that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped. We cannot agree that the "odds," [*Lyons v. Los Angeles*, 615 F.2d 143 at 1246 (9th Cir. 1980)], that Lyons would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever are sufficient to make out a federal case for equitable relief.

*Lyons*, 461 U.S. at 108. The Court concluded by noting that "five months elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of further unfortunate encounters between Lyons and the police." *Id*.

In Alkhulaqi's case, he was stopped twice and his inventory was seized once. However, even assuming that he might be stopped again, Alkhulaqi does not claim (and in fact, cannot claim, considering the officers let him go during his first stop) that every stop results in the confiscation of legal goods. Further, he does not allege that he has been stopped again in the five months that elapsed between the second stop and the filing of

the Complaint. Without more, Alkhulaqi has failed to plead a "real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic*, 851 F.3d at 738.

Thus, Alkhulaqi's request for prospective injunctive relief against interference with his distribution of hemp products is dismissed for lack of standing.

## CONCLUSION

For these reasons, Defendant Madison County's Motion to Dismiss Plaintiff's Complaint is **GRANTED in part and DENIED in part**.

Alkhulaqi shall proceed on his *Monell* claim in Count VI against Madison County for failure to train its officers. Counts VII and X are **DISMISSED** as to Madison County.

A scheduling and discovery conference will be set by separate order.

**IT IS SO ORDERED.**

**DATED: August 20, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**